GRACEY, JUDGE:
Claimant, Tucker’s Used Cars, Inc., a corporation based at Darl-ington, South Carolina, claims damages to its tractor-trailer rig, two automobiles on the trailer, and for expenses incurred, all incident to an accident which occurred about 1:30 a.m., on July 4, 1980, on the southbound off ramp, Exit 114, of 1-77, in Kanawha County.
On the previous day, a contractor had finished a blacktop resurfacing project for the Department of Highways. It was about 612 feet in length and covered the previous pavement from edge to edge. From north to south, the resurfacing began 150 feet northerly from the northerly end of a bridge, extended southerly that 150 feet, another 212 feet crossing the bridge, and another 250 feet southerly from the southerly end of the bridge. As one travels southerly, the left bridge guardrail is parallel with the left edge of the left lane of the two southbound lanes. But, again, as one travels southerly, the off ramp pavement, to the right, begins at or near the northerly end of the bridge, and becomes wider as the bridge is crossed. The right bridge guardrail is not parallel with the southbound lanes, but is parallel with the right edge of the off ramp pavement. There was no physical separation of the' off ramp from the right southbound lane for about 619 feet southerly from the southerly end of the bridge. At that point, the two split, and there had been a “114 EXIT” sign there until another accident, about twenty-four hours before this subject accident, had caused that sign to be knocked down. The resurfacing had covered all previous highway lining and no new lining had been done. Thus, for the 612 feet of the project, no lining defined the pavement edges, nor the separation of the two southbound lanes, nor the separation of the off ramp from the right southbound lane. There were no construction warning signs or devices present. One mile north of the exit was a sign advising southbound motorists “EXIT 114 POCATALICO 1 MILE”. About three-tenths of a mile north of the exit was a sign ad *283 vising southbound motorists “EXIT 114 POCATALICO NEXT RIGHT”.
The claimant’s tractor-trailer was proceeding southerly on 1-77. Several used automobiles had been purchased and loaded at Columbus, Ohio, and were being transported to Darlington, South Carolina. It was raining and quite foggy. Claimant’s employee, William Lee Wise, was driving and testified that it was very dark and “extremely difficult to see”. He said the headlights were on; that he had slowed to 40 miles per hour when he had encountered the rain about 20 miles northerly; and that he was going 35 miles per hour or less as he crossed the bridge. There being no lining on the new blacktop, he had trouble orienting himself. He said he could see the bridge guardrail, apparently the one on his right, and that he had tried to use it as an alignment factor. His fellow driver, Thorna Lee Evans, had just gotten out of the sleeper and shouted to him, “Pull to the left; we’re on the ramp!” When he pulled left, the trailer had started to tip, so he then pulled right and hit the brakes. The trailer jackknifed against the tractor, and the rig slid down the ramp into the guardrail, on the left of the ramp, at a 90 degree turn to the right. The rig came to rest at that point, the back of the tractor and the front of the trailer having gone over the guardrail.
Bobby Lee Tucker, president of the claimant corporation, testified concerning damages. The tractor, a 1974 GMC, had a pre-accident value of $16,500.00, was damaged beyond economical repair, and had a salvage value of $2,800.00, resulting in a loss of $13,700.00. Trailer repair cost was $2,100.00. Repairs to a 1977 Cadillac cost $805.00. Repairs to a 1978 Oldsmobile cost $160.00. Local wrecker service had cost $419.70. $780.00 had been paid for other recovery and towing services. The total of these items is $17,964.70.
There was no evidence presented that the respondent had any notice of the knocked down “114 EXIT” sign. In the absence of highway lighting, the Court deems the respondent 60% negligent for not having construction warning signs or devices in place where 612 feet of new surface covered pre-existing highway lining, particularly in view of the manner in which the off ramp there departed from the highway traffic lanes.
The Court is of the opinion that the speed of the claimant’s tractor-trailer was greater than a reasonable speed under the circumstances and conditions then and there existing, and finds the claimant, through its driver, 40% negligent.
Therefore, the Court makes an award to the claimant of 60% of its damages, in the amount of $10,778.82.
Award of $10,778.82.